Jbdse Marshall
delivered the opinion of the Court near the cloaa of the last term, when it was suspended until the present term.
Combs, as the holder of a bill of exchange due In January, 1833, drawn by Divine, accepted ¡ by. Brown the drawee, and endorsed by Bohannon the payee,, and'also by Huggins,'having obtained on it a judgment against the acceptor Brown, a bill was filed in the names of Brown, Divine .Bohannon, and Huggins, pray» ing to enjoin the judgment, and also to restrain and enjoin Combs from further proceeding on the bill of exchange, and that it might be cancelled. An order was endorsed on this bill by two Justices authorized to award writs of injunction, &c., directing the clerk .to-issue an injunction according to the prayer of the bill,., upon the complainant’s entering into bond with good-security in the penalty of $2200, conditioned according to law, and upon their entering on the bill a release of errors, &c. Under this order a bond was executed for the sum of $2200, naming as obligors all the parties named as complainants in the bill, and also Benjamin Bailey, and the condition of which, recites that. Combs had obtained a judgment against Brown, (at the March term, 1839,) for $1,271.67 with interest and costs, upon which, Divine, Brown, Huggins, and Bohan-non, had filed a bill enjoining the collection thereof, which injunction was granted upon their executing this bond with Bejamin Bailey as their security, and concludes. Now, if said Divine, etc., shall pay to said ■Combs all money or tobacco and costs due, or to become due to him in said action at law, and all such costs as shall ba awarded against them in casa said in *564 junction shall be dissolved, then the bond to be void, etc.
This bond, dated 26th day of June, 183,8, was executed by Brown, Divine, and Bad,ley alone,. And the injunction, ns endorsed on the subpoena, which issued on the 27th of June, 183.8, restrained and enjoined Combs and the Sheriff from collecting the judgment and execution in the bill mtentioned, stating that bond was executed as required, but said nothing about the bill of exchange. The injunction, after some years, was dissolved, and in September, 1847, Combs, in an action on the injunction bond against Bailey alone recovered a judgment for $1,607.35, with interest from that date, and costs which, amounting in all +o $1,-6I7.-68. Baily shortly after replevied for three months, with Graves as hissurity. In February, 1848, Combs Commenced the present action upon the bill of exchange against Bohannon as endorser; and as it appears, though not so stated in the declaration or pro* cess, for the benefit of Bailey, and to indemnify him for or against his obligation to pay the replevy bond, to which alone Combs looks and adheres for his own security and payment. Combs disclosed this fact in answer to a bill of discovery filed by Bohannon, and states that the arrangements was made with B.aily in consideration of his agreeing to throw no further obstacle in the way of collecting the money. .
The defendant, Bohannon, filed numerous pleqs to the action against him ; and among other pleas, No. 2, which relied upon the lapse of more than five years from the accrual of the cause of action before the commencement of this suit. To this the plaintiff replied, that long before five years had elapsed, etc., the defendant filed his bill and obtained from two justices, etc., an enjunction restraining and enjoining the plaintiff from further proceedings on the bill, and executed bond, and said injunction was served on the plaintiff, and remained in force until, etc., as will be seen by the record, etc., and that five years had not elapsed, including the time for which the injunction remained ex- *565 fOroe* A demurrer craving oyer of the record, and denying the sufficiency- of this replication, and of the record therein Referred to* to.avoid the bar, was over-, ruled* and the propriety of this decison is th.e first ques-. tiou to. be considered.
Will- the obtaining an injunction by a party, prevent the' running, o-f the statute oí. limitations within. the meaning, anil-intention of' the proviso, of-the.. 9 section of the.aob of¡ 1,795':-(Suit. 1.A37.,
An injunction enjoining a judgment at law against the acceptor of a bill-of exchange, is' notan injunction to a suit against orsers.
*565 The question presented by these, pleadings i.s whether;there ever was* in, fact, an,y injunction whi,ch proyented or restraiued Com.bs from bringing an. action on the bill against the drawer o,r endorsers.. It is indeed contended that if there had been an express inj unction to, this effect* it would not prevent the runningof time in baa' of an action, because the pendency of an injunction is, not one of the causes mentioned in the 6th section of the act of limitations, (Statute Law 1137,) nor o.ne of the obstructions referred to in the 9th section, (Page 1139,), th.e existen.ee of which may save the plaintiff from the-running of the statute. But although an injunction is-not named, nor literally described in the statute* yet,, when it is. resorted to by the party liable to the action,, for the very purpose of preventing or obstructing it* and does, in fact, if effectual according to its terms* prevent its being commenced; we are inclined to the' opinion that it comes within the reason and spirit of the saving clause of the 9th section. And if the party enjoined might obtain such a modification of the injunction as would permit him, contrary to its express mandate, and against the apparent equity of the case, to commence his action for the purpose of avoiding the bar by time, it would seem that the party who has obtained the injunction forbidding him to sue, has no right to require him to seek such relief against it, and cannot with propriety be allowed to claim advantage from his obeying the injunction, until he shall, by showing that it was inequitable and should not be retained, obtain a dissolution of it.
But it is not necessary to decide whether the time during the pendency of an injunction which prohibits the bringing of an action, may be relied on in making out the bar by limitation against the action commenced *566 after the injunction is regularly dissolved, and we do not decide the question. However this may be, we are satisfied that there was in this case no restraint or injunction, except as to further proceedings on the judgment against Brown, the acceptor of the bill of exchange. The order of the justices did not profess! to impose by its own force and unconditionally, any restraint whatever upon Combs, either in the collection of his judgment, or in proceeding upon the bill, and they had no authority to impose such restraint. They were authorized by the 2d section of the act of 1818, (Stat. Law 813,) to award writs of injunction, and the 3d section directs the Clerk to issue the writs of injunction so awarded. By the act of 1796, (Stat. Laws 809,) and by the general law the party obtaining an injunction is required to execute bond, &c., and by the act of 1827, (Stat. Law 815,) the clerk is to approve of the security. He is of course to take the bond. The order of the justices in this case conformed to their authority, and merely directed the clerk to issue a writ of injunction according to the prayer of the bill upon the complainants executing bond, &c., according to law. By its own terms it was conditional; there was not, and could not be any injunction under that order, until a bond was executed according to its mandate, and with the approval of the clerk, of which the proper evidence should be the writ of injunction, or as is commonly practised, the subpoena with an injunction endorsed upon it. And even if a writ of injunction or an endorsement on the subpmna was not indispensible-to the existence of an injunction, certainly the execution of a bond according to law, or intended to be so,, being required both by the law and the order was absolutely essential to any effectual injunction. But an injunction against further proceedings on the judgment, and an injunction against proceeding on the bill of exchange are substantially different, and a bond suitable for the one is not suitable to the other. And certainly a bond securing merely the judgment enjoined, with *567 •costs and damages, reciting that injunction alone, referring to no other, and not pretending to secure any damages which might accrue from any other injunction, could not under the terms of the order, authorize *or give effect to any injunction, except against the judgment. If the order was intended to authorize an injunction to the extent of both prayers of the Bill on the execution of bond according to law, the condition has been but partially complied with, and if there might be an injunction to the extent to which the condition has been complied with, there could not legally be one to any greater extent. If the Clerk, supposing the bond which he took to be a full compliance with the order, and a full authoi-ity to issue an injunction against the bill, as well as against the judgment, had accordingly issued an injunction against both, it would, in fact, have been unauthorized, except as to the judgment. And if it was binding at all to any greater extent, it might, so far at least as it related to the bill, have been discharged or quashed for want of a bond. But whether the Clerk mistook the extent of the order, and therefore took a bond for an injunction against the judgment only, or whether the parties did not desire to avail themselves of the order to any greater extent, and therefore executed the bond for enjoining the judgment only, it is evident that there was not only no bond authorizing an injunction against proceeding on the bill, but that there was neither a writ, nor an endorsement enjoining such procceeding. And as the order of the justices was not itself an injunction, there was neither in form nor in fact any restraint or injunction preventing the commencement and prosecution of any remedy which Combs might -have chosen to institute against the drawer or endorsers •o'f the bill. The record, therefore, does not sustain the averment of the replication, and is not such as it is therein stated to be. This discrepancy might, perhaps,, have been more properly the subject of a rejoinder denying that there was such record, etc. But as the *568 fe'c'ord is in fact brought before the Court, 'the question as to its effect is sufficiently presented by the demurrer '■which was improperly overruled.
As to 'this error, the judgment mus't Wreversed. We 'shall notice other proceedings in the case, only !sto far ■as may seem necessary for regulating the future progress ‘of the s’uity should the plaintiff file a sufficient ‘replication to the second pica.
’The first plea presented the general issue only, which was joined.
Plea No. 3, relied upon the facts that Combs had obtained .judgment against the acceptor, Brown, which Brown had enjoined with Bailey as his surity, that judgment had been obtained on the injunction bond against Bailey who had replevied it with Graves as his surity, that Bailey had 'compromised the debt with Combs by payment, or in some other way, in satisfaction and dis'charge of said bond, and that this suit is brought for the benefit of Bailey to 'enable him to indemnify him-'Self out of said 'defendant as endorser, etc.
Plea No. 4 sets forth the same facts in more 'general terms, and -avers that the judgment secured by replevin bond has been satisfied by arrangement’- between the plaintiff and 'Bailey.
Plea No. 5, after stating the preliminary facts as ia plea, No. 3, avers that since the execution of the re-plevy bond-, and before the -commencement of this suit Baily has, upon some .consideration, procured the transfer-from Combs to himself -of the defendant’s supposed liability on his aa.id .endorsement, and that in pursuance cf said agreement and transfer, Baily is prosecuting this suit-as an indeivnity against his own liability on the replevy bond., and- as a means of discharging the .same, etc.
The 5th -.plea was adjudged had on demurrer. The replication to the fourth plea denied that the bond was, or judgment had been satisfied, etc. To the third plea the plaintiff replied that the defendant.filed his bill and obtained an injunction against further proceeding on *569 the bill of exchange, that Baily was his security in the injunction bond executed therefor, that the injunction was afterwards dissolved and the bill dismissed, and he obtained judgment on the bond against Baily, who replevied the same with Graves as surety, all of which it says is verified by the record, that the plaintiff did agree on a Valuable consideration'to permit said Bailey to use his name in a suit on said bill of exchange against the defendant, and that said replevy bond has not been satisfied and discharged by any agreement between plaintiff and Baily. To this the plaintiff rejoined that he did not obtain an injunction, and that no injunction did in fact issue restraining Combs from sueing the defendant on the bill of exchange, that the plaintiff, for a valuable consideration, did permit Bailey, the security in the injunction and replevy bond, to prosecute this suit for his benefit on the bill, after the judgment thereon had been satisfied by the replevy bond, and concludes to the country.
The plea No. 6, which was adjudged insufficient on demurrer, is not in the record. But at the term after the preceding pleas had been before the Court, the defendant offered pleas No. 7,8, 9, and 19, which were rejected, and at a subsequent term he filed a plea marked xx, to which the plaintiff replied, and assue was joined thereon. This last plea, after stating the preliminary facts as in the third, plea, avers that since the 13th day of September, 1848, (the day on which Combs filed his answer to the bill of discovery herein,) said Bailey has compromised and arranged the debt by the payment of money, or in some other way, in satisfaction and discharge of said bond, thereby fully satisfying said bill of exchange, and that this suit was instituted in the name -of Combs, for the benefit of Baily and for his indemnity, etc., The replication merely denies that Bailey, by the payment of money, or in any ■ other way, ever satisfied ór discharged the replevy bond, and concludes to the country.
, A bill of dicov kty of matier of defence set out in a plea filed, oftered on filing the plea should b<v allowed, if the matter be material and can only be shown by the admission efthe defendant.
The fact that the matter pleaded occurred after the commencement of the suit, and consequently operated only as a bar to further prosecution did not prevent its being plead with other pleas and without any effect upon them: (9 Dam, m.)
On the day on which this plea(xx) was filed, and the issue made upon it, the defienden t offered a second bill of discovery, calling upon Combs and Bailey, to answer as to the alleged satisfaction of the replevy bond, on the ground that he could not otherwise prove it, and asking for an injunction or a continuance until the bill should be answered, offering to execute any bond which might be required. But the Court refused 'both an injunction and a continuance, to which the defendant excepted, and the bill was not answered. As the fact sought to be discovered was the only one in •issue under the last plea, and the bill of discovery was ■offered immediately .after the issue was made up, we >do not perceive on what ground the discovery and continuance should have been refused, unless because the bill was not sworn to. As the fact was alleged to have .occurred since the answer to the former bill of discovery, denying payment or satisfaction of the bond, the discovery was not precluded by the former bill or -.answer; and it is evident that the fact alleged and sought to be discovered, was deemed material by the Court, as well as by the parties. The discovery, if necessary, may still be had.
Passing by this refusal as a matter not very important in the present attitude of .the case, we observe that the only material difference between the third plea and the last one filed by the defendant, consisted in the fact that the former avers that the replevy bond was paid or satisfied, before the commencement of the si it, to which the plea must be understood to refer and the latter alleges its payment orsatisfaction, during the pen-dency of the action. This last .plea does not appear to have been presented or treated as a plea, puis dariem continuance, and as there is no suggestion in this Court, that it should be so treated here, we do not feet called upon, to decide, that it should be strictly so considered, or that if so considered, it should have the effect of superseding or waiving all prior pleas and issues, and of placing the fate of the cause upon this *571 plea aloné. For all that appears in the plea the new fact relied on, thoagh it happened after the commencement of the suit, may have occurred before any issue was joined and been a matter not within the personal cognizance of the defendant, it would seem that ha ought to be allowed to-plead it when discovered without incurring any disadvantage and especially without losing thereby the benefit of his previous pleadings.
Matter! existing but not discovered when plea* are filed may be pleaded after-wards in the discretion- of: the Court •
The mere circumstance that the fact pleaded occurred after the commencement of the suit, and could-therefore operate as a bar only to its further maintenance,, did not, as decided in Clark vs Fox, (9 Dana, 193,) prevent its being pleaded w-ith other pleas filed by the defendant, and without having any effect upon them. And as there was certainly a sufficient reason for not having pleaded it then, the plea when afterwards offered may be regarded as coming, like other pleas subsequently offered, within the discretion of the Court: and when allowed to be filed without opposition on condition-it should operate as an ordinary plea, .according .to-its own merits, and especially when it seems to -have been considered-on that footing by the parties and the Court. This conclusion accords, as we suppose, with the common practice in this State.- We therefore consider the defendant as being, entitled to -the benefit of all his pleadings and demurrers, and as going into the trial on the issues formed under the first, third-, fourth, and last-plea; the jury having been in fact sworn to try the issues joined.
On the'trial, the plaintiff, made ■ out a prima facie case under the general issue and'read the record of the -suit in chancery, enjoining the judgment against Brown, and of the suit of Huggins,-consolidated-with ifB-The defendant besides reading the two common law records* above referred to, and the first bill of discovery with the answer thereto,introduced evidence (as the bill of exceptions states,) conducing to show that-the replevy bond had been fully paid off and discharged-' by Baily to Combs,, as an ordinary and uaqualii.e4 *572 payment, and the plaintiff introduced testimony conducing to show that the said bond had not been paid off and discharged, but that an arrangement had been made betweeu Combs and Bailey, whereby Baily, advanced to Combs, the amount of said bond, not as a payment but simply as an advance upon the understanding or agreement that the same was not to be considered as a discharge of the bond, but that the said bond was to remain in full force and effect, as unpaid, and. Bailey was to have the right of sueing Bohannon, upon the bill for his own use and indemnity. The defendant offered to prove by Bailey himself, who seems to have been examined as a witness that he was the security of Divine and Brown, only, in the injunction bond, that they procured him to go security therein, Huggins and Bohannon having nothing to do therewith in any way or in the conduct and management of the chancery suit of Brown and Divine against Combs, but that Bohannon’s name was inserted by Brown and Divine. But objection being made, the Court refused to admit the proof, to which the defendant excepted.
A surely of an acceptor of a bill of exchange in a replevy bond or injunction bond (given to stay ihe judgment against the acceptor,) who pays off the debt lias no claim for r e m u n cration against an indors er of the bill.
If the trial had been upon the issue taken under the last plea alone, the proof thus rejected would have-been unnecessary, because that plea avers that Brown enjoined the judgment against him, and that Bailey was his surety in the injunction bond, and this fact not having been denied by the replication was admitted, and could not have been controverted on the trial of that issue, which left nothing to be decided by the jury but the question of fact whether Bailey had discharged or satisfied the replevy bond. But the fact itself is one of fundamental importance to the defense. For if Bailey was the security of Brown, the acceptor alone, he could not by paying the injunction bond or the re-plevy bond taken in the course of the remedy¿>y the holder of the bill against Brown, acquire any rights against the other parties to the bill, to whom his principal was liable as the principal and ultimate debtor; and if he. was the surety of Brown and Divine alone, *573 in the injunction bond, he could not by discharging the judgment on it or the replevy bond taken under it, acquire any right against Bohannon, to whom both of his principals were liable on the bill. Whatever inference might be drawn as to the fact from the record which showed that Bohannon, was a co-complainant in the bill praying for an injunction, the record was not conclusive if it could have been relied on as an estoppel, and the true state of the fact was open to proof to be weighed by the jury. If Bailey was the surety of Bohan-non as well as of Brown, or if he was co-surety with Bo-hannon for Brown, he might have acquired some right against Bohannon by paying the replevy bond, so far as Bohannon was bound to him as principal-or as co-surety in the injunction. But while' it is doubtful whether even on this ground, an action on the bill of exchange could be maintained for his indemnity after he had satisfied the holder of the bill, even against a party on whom he might call for indemnity, we are certain that it could not be maintained in the name of the former holder after he had received from the acceptor or his surety, or from the surety of the acceptor and drawer, satisfaction either of the injunction bond or of the replevy bond, for the purpose of indemnifying the person making the payment, by a recovery against a party who was under no obligation to him, but who was entitled to look both to the acceptor and the drawer, and to their surety in the remedy against them, for his own indemnity. The evidence relating to the satisfaction of the replevy bond by Bailey, does not fix the date of the transaction after the commencement of this action, and as it might have been important to prove the fact as to the suretyship, under the 3d and 4th plea, or under the general issue, the rejection of the evidence offered is deemed erroneous to the prejudice of the defendant. It is only on the ground that the arrangement between Combs and Bailey, relied on as a payment or satisfaction of the re-plevy bond, might not on account of its date be avail *574 able under the last plea but might be available under one of the others, that the evidence now under nolice was important, and it is only upon the same ground that the other special pleas could be deemed material after issue taken on the plea marked (xx,) which contains the same facts, except as to the time of the alleged payment.
In reference to the arrangement relied on as a satisfaction of the replevy bond and of the bill of exchange, the Court, instructed the jury “that if Bailey and Combs, agreed that Bailey, should advance to Combs a sum equal to the amount due on the replevy bond, that the bond should not be entered or be considered satisfied thereby, but should be considered as in full force until final adjustment to await the issue of a suit to be brought against Bohannon, for the use of Bailey, this was nota satisfaction of the bond or a merger of the bill of exchange, and was such an arrangement as it was legal and proper for them to make ”
This instruction either assumes that Bailey was the surety of Bohannon, which is contrary to the admission plainly implied in the replication to the last plea, and which we think the Court had no right to assume as being conclusively proved by the records in evidence, or it assumes that it was immaterial whether he was the surety of Bohannon or not. Although Bohannon’s name appears ns a co-complainant in the bill praying for the injunction, it may have been placed there without his knowledge or consent; and, as no injunction was in fact obtained against further proceedings on the bill of exchange and no bond was executed for that purpose, as Bohannon did not execute the bond of Brown and Divine, under which the judgment against Brown was injoined, and as, that injunction stayed an execution which had been levied on Browuls property, and thus prevented the probable discharge by him of his own debt, the record does not conclusively show that Bohannon did in fact, concur in filing the bill, and that Bailey was the security - of Bohannon, as well as of *575 Brown and Divine alone, for whose debt the records referred to show that the bill of exchange was made, and who alone executed the injunction bond as principals. Jt would seem probable too, that if Bailey, had not regarded them alone as his principal and rested on their responsibility, he would have required others to execute- the bond in that character, so as to show with certainty, for whom he was surety.
The instruction can only be maintained upon the ground that even though Bailey was not the surety of Bohannan, but of Brown alone, or of Brown and Divine alone, he might, by advancing the amount of the bond which secured the bill, purchase the bill or the beneficial interest in it from Combs, the holder, and use his name in an action against an endorser to whom each of his principals was liable, as a means of reimbursing the sum which he had paid for it; and that the bill might be kept alive for that purpose by the mere agreement of Combs and Bailey, that the bond of the latter, taken in the course of the remedy upon the bill against the acceptor, should not be considered as discharged by the advance from Bailey the obligor, to Combs the obligee, of the precise amount due- upon it without any other consideration but his liability as •obligor in the bond, and the beneficial interest in the suit to be acquired by the advance. A slight analysis of this agreement as stated in the instruction, and as ■presented in the evidence of the plaintiff, will show that it was in substance and in fact a payment on the bond, and that whatever, for the purpose of sustaining this suit, the parties may have said, it must, whenever they should come to a settlement, have operated even as between them, as a payment of so much on the bond. By the agreement as stated in the instruction, the bond was to be considered as in full force, until final adjustment, to await the issue of this suit for the benefit of Bailey, and such is the import of the plaintiff’s evidence. But how the advance was to be effected by the result of the suit is left to implication. Sup» *576 pose the suit should fail, and Bailey should thus lose his indemnity, would he have the right to reclaim the advance, and throw Combs upon the replevy bond for satisfaction, or in the adjustment then to take place, was the advance to be considered as a payment on-the bond ? Or suppose the suit should result favorably, and thus furnish an indemnity to Bailey, would Combs be bound to pay back the advance, and look for payment of his owur demand to what should be recovered in this action, or would the advance then be considered a payment of the bond, and Bailey look to the fruits of the action for his indemnity? It is not proved, and cannot be implied, that Combs was, by the agreement, to' pay back the advance in any event of the suit. It cannot be presumed that Bailey made a present to his creditors of the precise amount of the debt, expecting or intending that the same amount should again'be coerced on the bond, or that he paid this amount for the mere chance of the desired indemnity, with the understanding that the bond should he enforced against him, though the action on the bill for his benefit should fail, or that he intended to be subject to coercion on the bond, after Combs had received the full amount of it from him. We cannot regard the arrangement as amounting to anything else than that the advance should ultimately be regarded as a payment, but that it should not be so considered, until the termination of 'this action. It wras, in substance and in fact, a payment, but the credit for it was not to be entered during the pendency of this, suit, and thus the bond was to remain in force, but it was not to be enforced because the amount due on it had been advanced by the obligor to the obligee, upon no other consideration butthebond itself, and the right to prosecute the suit.
Now, it need not be denied'tbat these parties might lawfully agree that this advance should not be considered as payment until a certain period or event. But the question is, how other parties are to be affected by such an agreement ? Suppose the acceptor him *577 self had advanced to Combs the amount due on the bill, on no other consideration but his own liability and the permission to use the name of Combs in an action on the bill against an endorser, for the indemnity of himself, the acceptor; could they change the nature and effect of the transaction, and invert the liability of the parties to the bill by merely saying that the bill should not be considered as paid, but should remain in force until the action should be tried ? This would be an apparent absurdity. For the acceptor being bound to all the other parties for payment of the bill, and being, in efiect, the principle debtor for whom the drawer and endorsers aresurities, he cannot acquire any rights against them upon the bill, and any interest which he may acquire in it incurs to their benefit. Any arrangement between him and the holder which discharges him as acceptor, discharges also the other parties, and the holder and acceptor cannot, by their agreement, convert the responsibility of the endorser to the holder into a means of indemnifying the acceptor for his responsibility or for his payment as such. He cannot, therefore, by any advance upon the bill, acquire a right to use it against any of the other parties.
A surety in nn injunction bond enjoining a judgment against the aoceptorof abill ofexchange, has no light to call upon the indors-eis of the bill for indemnity for such payments, they are not his principals or co-sureties, nor has he any right to be substituted to a tight which tha payee once had against endorsers for payment of the bul.
Has the surety of the acceptor, in a bond executed in the course of the remedy against him upon the bill, and which is a security for the bill, and includes it, any greater right as against the other parties to the bill than he himself has? Or can he, by any merit of his own obligation, acquire a right against any prior surity of his principal ? The case of Patterson vs Pope, (5, Dana, 241) — approved in Kouns vs Bank of Kentucky—2, B. Monroe,) and the cases therein cited show that such a surity is considered as looking to his principal and his principal’s property alone; and that, although by payment he may have a right to be substituted to the remedies of the creditor against the principal and his property, he has no right to be substitituted to his remedies against the prior surities of the same principal for the same debt; but that they are dis *578 charged by payment of the debt, either by their principal or his surity coming in aid of him in the course of the remedy against him, and that they, if compelled to pay the debt, may be substituted to the rights of the creditor,-or against such subsequent suret}'. The case of Parsons vs Briddock, referred to in the cases just cited, is an exemplification of this principle as well as an authority for it; and it is amply sustained by principal and authority. Upon this principal, if Bohannon had been or.should be compelled to pay his bill, he might be substituted to the remedy of Combs upon the replevy bond of Bailey. As he would have a right to indemni- ' ty from Bailey for payment'of the bill, it is impossible ' that Bailéy should, by paying it, acquire aright to idem» nity against him. And so, as Bohannon would have a right, on making payment to the benefit of Bailey’s bond, Combs- has no right by arrangement with Bailey, to deprive him of that benefit, and cannot, in consideration of payment by Bailey upon his bond, 'which, in effect is payment of the bill by or for the acceptor, invest Bailey • any more than he could invest the acceptor himself with a right to indemnity against Bohannon as endorser of the bill.
Assuming, then, that Bailey was the surity of Brown or of Brown and Divine, we regard him as occupying, so-far as the present question is concerned, precisely :the same attitude with respect to Bohannon that his principals would do And we are satisfied that he and Combs had no right by merely agreeing to suspend the 'credit of the advance made on account of the replevy bond, or by agreeing that it should be considered as remaining in force, when it was obviously not to be enforced, make that which was substantially a payment, not to be a payment-, for the purpose or with the effect of sustaining this action for the indemnity of Bailey, who would not be entitled to such indemnity by a formal and acknowledged judgment. And even if this advance was not a payment, still as it was the *579 exact amount of the bond which included the bill placed in the hands of Combs by the party to whom Bohannon has a right to look for indemnity, the effect is the same. It is a full indemnity to Combs in actual money for the amount of the bill, and Bohannon is entitled to the benefit of that indemnity as a protection against the present demand whether asserted for the benefit of Combs or of Bailey claiming under him, but who is bound to indemnify Bohannon.
Replevying s judgment against an acceptor of a bill of exchange, does not extinguish ihe remedy of the holder of_ the bill a-gains.t the itvdor-ser.
The instruction, therefore, is erroneous, to the prejudice of Bohannon.
Much of the reasoning used in considering the instruction just noticed,. applies also to, the question, arising on the demurrer to the 5th plea,. But although we are satisfied that an action on the bill ought not t.o be maintained against an endorser for the indemnity of the acceptor or his surit.y, even before pavment.of the bill by one of them,..yKe are not satisfied that the mere agreement of Combs,, even fora valuable consideration, that Bailey might sue for his own indemnity in the name of Combs, vestssuch an interest in the other party as actually extinguishes, or discharges the bill so as to bar this action which, ..though brought and carried on under -the arrangement -may, for all that appears in this plea, be at last a necessary means of satisfying the bill to Combs. The replevy bond does not of itself ex-. tinguish the rights of Combs upon the bill.
Notwithstanding the agreement stated, Combs might become entitled to the fruits of this action should the obligors become unable to pay or be discharged from the replevy bond to which he looked for security in allowing one of them to use his, name for his own benefit. The unsatisfied bond did nQ;t discharge or satisfy the bill. And it is not averred that the consideration of the alleged transfer of Bohannon’s supposed liability on the bill was given or received in satisfaction either of the bill or the bond, or that it was deemed, or was in fact equivalent to either. Notwithstanding the alleged transfer which, upon all the facts stated *580 ¡n the plea, was only an agreement that Bailey might prosecute this suit for his own indemnity or as a means of paying the bond, Combs retained the legal title to the bill against Bohannon. The alleged transfer gave Bailey at most but an equitable right, as againstCombs,to apply the fruits of this action to the payment of the bond, or to his own reimbursement if he paid it otherwise. And not only would this equity be subordinate to the legal rights of Combs, and to his equitiable right to have satisfaction of his debt from the bill or from the bond, but his own reception of the proceeds of the action before payment of the bond, would in fact accomplish the objects of the transfer and meet the equity of Bailey as fully as if Bailey himself received them. While the bond remained unsatisfied, Combs, the legal holder of the bill, and the legal and only plaintiff in the action, had a right to look to the action, and to appropriate its proceeds to his own indemeity. True, a recovery in this action and an appropriation of the proceeds, whether by Combs or Bailey, would not, as intended, completely discharge Bailey but would make him responsible to Bohannon. But whatever right Bailey might have to complain of the failure of the object which he and Combs may have expected from the prosecution of this suit, the incompetency of Combs to convert the liability of Bohannon to him into an indemnity for Bailey, cannot destroy that liability, and the mere agreement and attempt to do so cannot, while his demand upon the bill is really unsatisfied, discharge Bo-hannon or defeat this action in which Combs is not only the nominal plaintiff, and upon the face of tha record the sole beneficiary, but in which, for all that appears in the plea, he may have a real interest for his ultimate indemnity. . The plea was evidently intended to present a case resting upon the alleged agreement and transfer, without actual satisfaction of the demand upon the bill or the bond. It is, therefore, deemed insufficient and the demurrer to it was properly sur tained.
Brown, Lindsey, and Marshall, for plaintiff) Robertson and Kinkead, for defendants.
We perceive no abuse of discretion in not allowing pie as No. 7, 8, 9, and 10 to be filed. They do not appear to have been necessary in addition to other pleas in the case, to a fair presentation of any substantial matter of defence. Nor do we perceive that the verdict was excessive. This last matter may, however, be more fully developed on another trial.
Fcr the errors before noticed the judgment is reversed and the cause remanded with directions to sustain the demurrer to the replication to the plea of the statute of limitations (the 2d plea) and for further proceedings consistent with ihis opinion.